UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| | :  **OPINION AND ORDER** |
| - against - | : |
| | :  **08 Mag. 2735** |
| BERNARD L. MADOFF, | : |
| | : |
| Defendant. | : |

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Before the Court is a motion by the Government to detain Defendant Bernard L. Madoff pending trial on the grounds that: 1) the facts in this case present a clear risk of flight and obstruction of justice and 2) neither the current conditions of release, nor any other conditions that could be imposed, are sufficient to protect the safety of the community. The Government argues that Madoff's recent transfers of valuable items to third parties constitutes a change in circumstances that render his current bail conditions, and any other bail conditions that might subsequently be imposed, insufficient to insure against risk of flight and danger to the community. Because the Government has failed to meet its legal burden, the motion is **DENIED**. The Court finds, however, that the following additional conditions shall be imposed to address the identified concerns:

> (1) The restrictions set forth in the preliminary injunction entered on December 18, 2008, in the civil case brought by the SEC before District Judge Louis L. Stanton, including restrictions on transfer of all property whatsoever, wherever located, in the possession or under the control of Madoff, **SHALL** be incorporated into the current bail conditions;
>
> (2) The restrictions set forth in the voluntary restraint agreement signed by Mrs. Madoff on December 26, 2008, **SHALL** be incorporated into the current bail conditions; and

(3) Madoff **SHALL** compile an inventory of all valuable portable items in his Manhattan home. In addition to providing this inventory to the Government, Casale Associates, or another security company approved by the Government, **SHALL** check the inventory once every two weeks. Casale Associates, or another security company approved by the Government, **SHALL** search all outgoing physical mail to ensure that no property has been transferred.  The Government and Madoff shall agree on a threshold value for inventory items within one week of this Order.

## II. BACKGROUND

On December 11, 2008, the Government initiated the instant criminal case via a Complaint charging Madoff with one count of securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5. Upon his arrest, Madoff was interviewed by Pretrial Services, which did not recommend pretrial detention. (Defendant's Memorandum in Opposition ("Def. Opp."), Jan. 8, 2009, at 1-2.) At presentment, the Government did not seek detention, and the Parties jointly proposed a set of bail conditions, so ordered by the Honorable Douglas F. Eaton on December 11, 2008.[1] (*Id.*) After a series of amendments,[2] which added conditions to bail or adjusted dates by which certain conditions were to be met, the bail conditions currently in effect were entered on December 19, 2008.[3] They are:

(1) a $10 million personal recognizance bond secured by Madoff's Manhattan apartment,

---

[1]The original conditions presented by the Parties were: (1) a $10 million personal recognizance bond to be secured by Madoff's Manhattan apartment (valued at approximately $7 million), and to be co-signed by four financially responsible persons, including Madoff's wife; (2) surrender of Madoff's passport; (3) travel restricted to the Southern and Eastern Districts of New York and the District of Connecticut; and (4) release upon Madoff's signature and that of his wife, with the remaining conditions to be fulfilled by December 16 at 2:00 p.m. (Government's Memorandum ("Gov. Mem."), Jan. 6, 2009, at 1-2.).

[2]On December 17, 2008, the Government presented the Parties' joint proposal of certain additions and modifications. This joint proposal was so ordered by the Honorable Gabriel W. Gorenstein. (*See* Marc O. Litt's Letter to the Court, Dec. 17, 2008 (Docket No. 7).)

[3]By letter dated December 19, 2008, the Government submitted the jointly proposed bail conditions modifications. (Marc O. Litt's Letter to the Court, Dec. 19, 2008 (Docket No. 10).) The Government provided a comprehensive list of the bail terms, including proposed additional conditions, and The Honorable Theodore H. Katz so ordered this joint proposal. (*Id.*)

and Madoff's wife's properties in Montauk, New York, and Palm Beach, Florida, and co-signed by two financially responsible persons, Madoff's wife and brother;

(2) the filing of confessions of judgment with respect to Madoff's Manhattan apartment and his wife's properties in Montauk, New York, and Palm Beach, Florida;

(3) other than for scheduled court appearances, Madoff is subject to home detention at his Manhattan apartment, 24 hours per day, with electronic monitoring;

(4) Madoff employs, at his wife's expense, a security firm acceptable to the Government, to provide the following services to prevent harm or flight:

> (a) the security firm provides round-the-clock monitoring at Madoff's building, 24 hours per day, including video monitoring of Madoff's apartment doors, and communications devices and services permitting it to send a direct signal from an observation post to the Federal Bureau of Investigation in the event of the appearance of harm or flight;
> (b) the security firm will provide additional guards available on request if necessary to prevent harm or flight;

(5) Madoff and his wife have surrendered their passports.

(*See* Docket No. 10.)

In a related civil proceeding before The Honorable Louis L. Stanton brought by the Securities and Exchange Commission ("SEC") against Madoff and Bernard L. Madoff Investment Securities LLC, the Parties entered into a preliminary injunction on December 18, 2008, pursuant to which Madoff was explicitly enjoined from transferring any assets belonging to him or his company. (Order on Consent Imposing Preliminary Injunction, Freezing Assets and Granting Other Relief Against Defendants, Dec. 18, 2008, *SEC v. Madoff, et al.*, No. 08 Civ. 10791 (LLS) (Docket No. 8).) This injunction requires Madoff to "prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by or under the

3

direct or indirect control of, Defendant . . . ." (*Id.* at 3.) This preliminary injunction was not a condition of bail, nor was it incorporated into Madoff's conditions of release on bail.

Subsequently, on or around December 24, 2008, Madoff and his wife mailed packages to family and to friends. The contents of these packages have been characterized by Madoff as "gifts" and items of "sentimental value."[4] (Def. Opp. at 3-4.) Upon learning of these transfers, the Government sought a hearing to request that Madoff be detained pending trial. According to the Government, the transfers at issue contained personal property that was clearly under Madoff's control, and the value of the items may exceed $1 million.[5] The Government argues that a handwritten note contained in one package and authored by Madoff presents further proof that these items were in Madoff's possession and control. (Transcript of January 5, 2009, Hearing ("Tr.") at 4-5.) The Government concludes that these actions, which it describes as the dissipation of personal assets, violated the preliminary injunction in place in the civil case against Madoff, and constitute an obstruction of justice cognizable under 18 U.S.C. § 3142. (*Id.* at 30 ("Here the obstruction that we see is the inability to get restitution and forfeiture proceedings to victims . . . .").) Building on this argument, the Government asserts that this type of economic harm represents a danger to the community as contemplated by § 3142 of the Bail Reform Act.

The Government further maintains that Madoff's violation of the preliminary injunction has heightened significance because it occurred within one week of the issuance of the injunction

---

[4]The Government is rightly skeptical of this claim.  It is highly suspect that a man as sophisticated as Madoff appears to be did not pause to consider the possible ramifications of this proposed course of action on his release conditions.  Given Madoff's failing in this regard, it is appropriate that his ability to transfer property be restricted as completely as possible.

[5]Madoff does not take issue with this valuation. Indeed, the force of the Government's argument would not be materially diminished if the value were less than suggested unless the value clearly was negligible.

and clearly indicates his lack of respect for the limits put in place by the Court. (Tr. at 4-5.) The Government concludes that the continued pretrial release of Madoff poses a clear risk of flight and obstruction of justice, as well as a danger to the safety of the community, which includes victims of Madoff's alleged fraud.

Madoff argues that he has not violated the conditions of his bail. He admits that personal items, several of which belonged to his wife, who is not a party to either the criminal or civil case against him, were mailed to some family members and one couple – friends of Madoff and his wife. Madoff asserts that these items were holiday gifts and heirloom pieces of sentimental value, and were sent without an intent to violate any court order. Madoff's counsel acknowledges that it was a mistake, and that as soon as the impropriety of the action became known to Madoff, he began working to get the items back. (*Id.* at 12-14.) Moreover, Mrs. Madoff has now voluntarily agreed to a freeze on her assets, including her jewelry. (*Id.* at 11.)

Following a hearing on the Government's application, the Parties submitted briefs elaborating on their respective positions. While apparently conceding that there has been no violation of the specific conditions of bail in the instant case,[6] the Government reiterates that no bail conditions can be set that adequately address the flight risk or potential harm to the community.  The Government articulates this harm as the dissipation of assets that will arguably become part of Madoff's restitution debt for victim recovery. (Gov. Mem. at 5-6.) The Government argues it is not practical to monitor all of Madoff's assets to prevent further

---

[6]The Government does not identify any violation of the conditions of release, and no violation is apparent. If Madoff had violated a condition of his release, the Government would have been entitled to move for detention pursuant to 18 U.S.C. § 3148(b). While this would have provided a clear basis for the motion, it likely would not have changed the result herein as the Court would still be required to address the questions of flight and danger.

dissemination contravening the civil case's preliminary injunction. (*Id.*) Thus, it concludes that detention is necessary because there are no conditions of release that can assure the safety of the community. Madoff counters that most of the items have been recovered, and that he is in the process of recovering the outstanding items at this time. (Def. Opp. at 4.) He argues that the Government failed to make the threshold showing to allow for a consideration of detention, and that it failed to make any showing under the law that Madoff is a flight risk of the caliber mandating detention, or that he can disseminate assets in any fashion that could be considered a harm cognizable under § 3142 of the Bail Reform Act.

## III. DISCUSSION

**A. Legal Standard**

Generally, a court must release a defendant on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance when required and the safety of the community. *See* 18 U.S.C. § 3142(c)(1)(B). The issue at this stage of the criminal proceedings is not whether Madoff has been charged in perhaps the largest Ponzi scheme ever, nor whether Madoff's alleged actions should result in his widespread disapprobation by the public, nor even what is appropriate punishment after conviction. The legal issue before the Court is whether the Government has carried its burden of demonstrating that no condition or combination of conditions can be set that will reasonably assure Madoff's appearance and protect the community from danger.[7] 18 U.S.C. § 3142(e).

Under 18 U.S.C. § 3142(b),

> The judicial officer shall order the pretrial release of the person [charged with

---

[7]Were the Court to issue a detention order against Madoff in the context of a bail hearing, the object would not be to punish him, but to achieve these twin goals under the Bail Reform Act.

> an offense] on personal recognizance, or upon the execution of an unsecured appearance bond in an amount specified by the court . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

*Id.* The Government may move for detention under either § 3142(f)(1) or § 3142(f)(2). Under subsection (f)(1) of the Act, the Government may seek a detention hearing in cases where the defendant has been charged in a case involving certain crimes, including: 1) a crime of violence, which carries a maximum term of ten years or more; 2) an offense which carries a maximum sentence of life imprisonment or death; 3) serious drug offenses; 4) felonies committed by certain repeat offenders; and 5) felonies that are not otherwise crimes of violence that involve a minor victim or the possession or use of a firearm, destructive device, or any other dangerous weapon. 18 U.S.C. § 3142(f)(1). As the Government appears to concede, there is no evidence that any of the enumerated bases in this subsection are applicable to Madoff's situation.

The Government may also seek detention under § 3142(f)(2) in a case that involves: either "A) a serious risk that the defendant will flee; or B) a serious risk that [the defendant] will obstruct or attempt to obstruct justice . . . ." 18 U.S.C. § 3142(f)(2). The Government relies on both of these bases, and alleges that it has demonstrated both a serious risk of flight and a serious risk of obstruction of justice.

Presented with a motion for detention, the Court undertakes a two-step inquiry. "First, the court must determine whether the Government has established 'by a preponderance of the evidence that [Madoff] . . . presents a risk of flight or obstruction of justice.'" *United States v. Khashoggi*, 717 F. Supp. 1048, 1049 (S.D.N.Y. 1989) (quoting *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988)). If the Government carries this initial burden, the Court must

determine whether there are reasonable conditions of release that can be set or whether detention is appropriate. *Friedman*, 837 F.2d at 49; *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986), *cert. dismissed*, 479 U.S. 978; 18 U.S.C. § 3142(e). To support detention based on danger, the Government's proof must be clear and convincing, 18 U.S.C. § 3142(f)(2), while detention based on risk of flight must be proven by a preponderance of the evidence. *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (citing *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985); *United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986)). Furthermore, in making this determination, the Court must consider a set of four factors established by Congress. *See* 18 U.S.C. § 3142(g). These include "'the nature of the offense, the weight of the evidence against the suspect, the history and character of the person charged, and the nature and seriousness of the risk to the community.'" *Khashoggi*, 717 F. Supp. at 1049 (quoting *Chimurenga*, 760 F.2d at 403). The Government's task is not insubstantial at this second stage. In most cases, release is the presumptive state. *See* 18 U.S.C. §§ 3142 (b) and (c). "The court should also 'bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial.'"[8] *Khashoggi*, 717 F. Supp. at 1049 (quoting *Shakur*, 817 F.2d at 195).

   Thus, under the Bail Reform Act, the Government must first establish by a preponderance of the evidence that the new circumstances presented in this application demonstrate that there is a serious risk that Madoff will flee or that there is a serious risk that he will obstruct or attempt to obstruct justice.

---

[8] Even for the most serious offenses, more than half of all defendants are released on bail conditions, including 51% for violent offenses, 57% for property offenses, and 73% for fraud. *See, e.g.*, U.S. DEPT. OF JUSTICE, BUREAU OF JUSTICE STATISTICS, FELONY DEFENDANTS IN LARGE URBAN COUNTIES, 2004 - STATISTICAL TABLES, TABLE 9. FELONY DEFENDANTS RELEASED BEFORE OR DETAINED UNTIL CASE DISPOSITION, BY MOST SERIOUS ARREST CHARGE (2004), http://www.ojp.gov/bjs/pub/html/fdluc/2004/tables/fdluc04st09.htm (last visited Jan. 10, 2009).

**B. The New Information Provided by the Government Does Not Demonstrate Either a Serious Risk of Flight or Serious Risk of Obstruction of Justice**

**1. Risk of Flight**

The Government's burden regarding risk of flight is made more difficult because the record reflects that conditions have already been put in place to address this concern and, until this motion was filed, the Parties had agreed that the measures in place were adequate. The Government did not initially seek detention of Madoff at presentment; rather, bail conditions were set and Madoff was released. (Gov. Mem. at 1-2.) Subsequently, at the request of the Government and with Madoff's consent, these bail conditions were modified on December 17 and again on December 19. (*Id.* at 2. Each time, the Government and the Court agreed with Madoff that adequate and reasonable measures were in place.) The Government contends, nevertheless, that "circumstances have changed markedly since the defendant's bail was set on December 19, 2008," and that detention is now warranted. (*Id.* at 4.)

To support its contention that Madoff presents a serious risk of flight, the Government cites: 1) the scope and nature of the alleged crime; 2) the attendant probability that the applicable Sentencing Guidelines in the circumstance of a conviction will likely result in an advisory range at the top of the Guidelines; 3) the fact that Madoff has assets that cannot be effectively restrained; 4) the severance of Madoff's ties to New York to such an extent that only his wife and brother are willing to sign his bond; and 5) finally, Madoff's recent act of distributing valuable personal property to third parties. (Gov. Mem. at 5-6; Government's Reply ("Gov. Reply"), Jan. 8, 2009, at 4.) The Court agrees with the Government that it should consider "changed" circumstances, but three of these factors – 1, 2 and 4 – are not new, and presumably have been

9

taken into account in the current bail conditions.[9] In addition, factors 3 and 5 are aspects of the same argument, as the Government argues that factor 5 illustrates how factor 3 comes into play. More importantly, the Government fails to explain how the transfers in question change the calculus with respect to the question of risk of flight.

Finally, the Government's concession during the January 5, 2009, hearing severely undermines any claim that there is a *serious* risk of flight as required by § 3142(f)(2) of the Bail Reform Act. On this point, the Government admitted that "the prior bail orders substantially diminished [the risk of flight] by home detention, electronic monitoring and then subsequently by order of the Court the imposition of a 24 hour guard. But that doesn't make the flight risk zero. There is still some flight risk . . . ." (Tr. at 22.) In this regard, however, the Government articulates an erroneous legal standard.  The Act does not require that the risk be zero, but that conditions imposed "reasonably assure" appearance. The Government points to the unprecedented nature of the charges in this case. However, the conditions imposed for release are unique in their own right, and appear reasonably calculated to assure Madoff's appearance when required.

Aside from the bare assertion that there remains some risk of flight, the Government has failed to articulate any flaw in the current conditions of release.  This omission is important because it does not permit the Government to demonstrate, or the Court to assess, the second part of the Government's burden, that there are "no condition or combination of conditions" which

---

[9]This case contains many unusual tidbits, most of which present no new or changed information. Thus, while the Government notes in its Reply Brief that Madoff was arrested with $173 million in signed checks in his desk apparently waiting to be sent out (Gov. Reply at 2), this was obviously known at the initial bail setting. It may be interesting and provocative, but has limited probative value regarding the issues before the Court.

could address this identified risk. *Shakur*, 817 F.2d at 195. Given that the Government 1) has conceded that the flight risk has been "substantially diminished" with the current conditions of release and 2) is constrained to the mere contention that the flight risk is not "zero," this Court finds that the Government has failed to carry its burden of showing by a preponderance of the evidence that Madoff presents a serious risk of flight. (Tr. at 22.)

### 2. Obstruction of Justice

Absent a showing of a serious risk of flight, the Government must show a serious risk of obstruction of justice to merit a detention hearing. 18 U.S.C. § 3142(f)(2).  The Government sets forth two potential theories on its claim of obstruction of justice.  First, it maintains that Madoff's "release on bail presents a clear risk of further obstruction of justice" because the dissipation of his assets through transfers to third parties obstruct justice within the meaning of the bail statute, insofar as it makes it more difficult to recover all available forfeitable assets to recompense victims. (Gov. Mem. at 6.) Alternatively, the Government maintains that the transfer of assets violated the injunction in the civil case before Judge Stanton, and this constitutes obstruction of justice.  (*Id.*)

Madoff argues that neither theory is supportable.  First, he urges that the alleged dissipation of assets here at issue does not constitute obstruction of justice within the plain meaning of 18 U.S.C. § 3142(f)(2)(B). To support this contention, Madoff notes that the Government has made no showing that any of the distributed items could constitute a part of potential victim restitution funds. (Def. Opp. at 10.) With respect to the second theory on obstruction, Madoff asserts that the alleged violation of Judge Stanton's order in the civil action related to this case does not constitute obstruction of justice, as the violation of a civil court order

11

carries its own set of remedies– such as contempt proceedings. (Def. Opp. at 7.) Madoff elaborates on this point, noting that the Bail Reform Act does not define obstruction of justice, and that the statutory provision detailing the power of the federal courts to punish contempt, 18 U.S.C. § 401, differentiates between obstruction of the administration of justice and disobedience or resistance to lawful court order in its description of contempt offenses. (Def. Opp. at 7.)

      The Parties cite no caselaw to support their respective assertions about the meaning of "obstruction of justice" within the context of the Bail Reform Act.  The question of whether Madoff's distribution of assets, whether characterized as "sentimental effects" (Def. Opp. at 10) or "$1 million worth of valuable property" (Gov. Mem. at 8), constitutes a serious risk of obstruction of justice is a threshold question in the inquiry in this matter. The Bail Reform Act "does not permit detention on the basis of dangerousness in the absence of risk of flight . . . [or] obstruction of justice . . . ." *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). While the Parties' positions each seem to have some merit with respect to the definition of "obstruction," what constitutes obstruction only propels the Government halfway to its objective.  The question is not simply whether Madoff's actions can be considered obstruction, but whether there is a *serious* risk of obstruction in the future.  The statute, by its nature, is always looking forward.  To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward.  While substantial questions remain as to whether the Government has met its burden of showing that Madoff poses a serious risk of obstruction of justice, the Court does not find it necessary to resolve this issue in order to decide the Government's application. As set forth below, even if there were obstruction, and even if there

12

remains potential for obstruction in the future, the Government has failed to demonstrate that no conditions can be set to reasonably protect the community from this form of obstruction.

**C. The Government's Proffer that No Conditions Will Reasonably Assure the Safety of the Community**

Were the Court to conclude that the Government had carried its initial burden of demonstrating a serious risk of flight or obstruction of justice, it would have to assess "whether any condition or combination of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (citing *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986), *cert. dismissed*, 479 U.S. 978); 18 U.S.C. § 3142(e). For the Government's detention application to succeed, the Court would have to find that the Government has met its burden of showing 1) by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any other person and the community; or 2) by a preponderance of the evidence, that there is no condition or combination of conditions that would reasonably assure the "presence of the defendant at trial if released." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (citing *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985); *United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986)). In its determination, the Court must consider available information concerning the following factors: 1) nature and circumstances of the offense charged; 2) weight of the evidence against the accused; 3) history and characteristics of the defendant, including physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, and past conduct and record of past appearances; and 4) nature and seriousness of danger to any person or the community that

would be posed by the person's release. 18 U.S.C. 3142(g). Despite having concluded that the Government has failed to carry its burden with respect to risk of flight, the Court considers the issue of danger.

### 1. Safety of the Community

The Bail Reform Act provides that "the facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2). However, even if the Government can meet this burden, "the Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice or an indictment for the offenses enumerated [in 18 U.S.C. § 3142(f)(1)]." *Friedman*, 837 F.2d 48, 49 (remanding so the district court could set conditions for defendant's release on bail). Were the Government to succeed under the serious risk of flight or obstruction of justice test discussed above, to prove its burden here it must affirmatively answer each prong of a three part inquiry. First, the Government must show economic harm is a danger to the community cognizable under the Bail Reform Act, as codified in 18 U.S.C. § 3142; succeeding in that, the Government must next establish the potential for Madoff to execute actions that would merit economic harm for these purposes; proving that, the Government must then prove by the relevant standard of clear and convincing evidence that no "condition or combination of conditions" can adequately mitigate the danger, save detention of Madoff.

### a. Is Economic Harm a Danger Cognizable Under the Bail Reform Act; Do the Potential Actions of Madoff Rise to the Level of Economic Harm

The Government argues that Congress intended the "safety of the community" language

in the Bail Reform Act to be given broad construction. (Gov. Mem. at 3.) The Government uses

this foundation to argue that courts have "construed the statute to find that protection of the

community from economic harm is a valid objective of bail conditions." (*Id.*) Citing a series of

cases to support its assertion, the Government concludes the danger to the community based on

the possibility that Madoff may attempt to distribute restitution assets rises to the level of a safety

concern as contemplated by § 3142 of the Bail Reform Act.

Madoff notes that the Government's argument is conspicuously lacking in references to

Second Circuit authority on the extension of the concept of danger to the community to

encompass economic or pecuniary harm sufficient to justify a revocation of release. Madoff

specifically attacks the Government's reliance on cases concerning post-conviction detention,

where the standard is governed by 18 U.S.C. § 3143, which provides a more lenient burden of

proof to the Government, and its use of cases where the crimes at issue fell under the felonies

enumerated under 18 U.S.C. § 3142(f)(1), pursuant to which a rebuttable presumption in favor of

detention may arise under certain circumstances, *see* 18 U.S.C. § 3142(e). (Def. Opp. at 7, 12-

13.) Madoff argues that the Government has failed to establish that the dissipation of restitution

funds rises to the level of endangering the community for purposes of a pretrial detention

application.

In urging the Court to adopt its interpretation, the Government asserts that the legislative

history of the Bail Reform Act makes clear that Congress intended that the "safety of the

community" concern in § 3142 was expected to be construed as broader than merely danger of

harm involving physical violence. (Gov. Mem. at 3 (quoting S. Rep. No. 225, 98th Cong., 1st

Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195) ("The reference to safety of any

other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").)

Courts should approach such "invitations" to broadly construe statutes with caution. The line between construing a statute and judicial lawmaking can become blurred. Because the Committee indicates that "harm" to the community should not be limited to "physical violence," it does not mean a court should be able to identify other types of harm and read them into the statute.  Indeed, if one were attempting to construe the Committee's intention, the sentence immediately preceding the one the Government has focused on would suggest that, as an initial matter, the Committee's proposition would apply only to activities which are in fact crimes. *See id.*; *see also* GORDON MEHLER, JOHN GLEESON, AND DAVID C. JAMES, FEDERAL CRIMINAL PRACTICE: SECOND CIRCUIT HANDBOOK 107-08 (8th ed. 2007-2008) (hereinafter "MEHLER, GLEESON & JAMES, SECOND CIRCUIT HANDBOOK") ("The Bail Reform Act's concept of dangerousness covers the effect of a defendant's release on the safety of identifiable individuals, such as a victim or witness, as well as 'the danger that the defendant might engage in criminal activity to the detriment of the community.'" (quoting *United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history))).

In reviewing all the cases referenced by the Parties, the Court concludes there is support for considering economic harm in evaluating danger to the community under § 3142 of the Bail Reform Act. The Government identifies *United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992),

16

which asserts that "danger may, at least in some cases, encompass pecuniary or economic harm." *Id.* at 192 (referencing *United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir. 1979) (danger not limited to physical harm; the concept includes the opportunity to exercise a substantial and corrupting influence within a labor union)); *see also United States v. Parr*, 399 F. Supp. 883, 888 (W.D. Tex. 1975) ("The 'danger to . . . the community' [language in the Bail Reform Act] permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical harm might result to the community at large."). The only case from the Southern District of New York referenced by the Government is *United States v. Stein*, 2005 WL 3071272 (S.D.N.Y. Nov. 15, 2005). In *Stein*, the Honorable Lewis A. Kaplan arguably infers an economic harm as danger to the community pursuant to § 3142 of the Bail Reform Act by addressing the potential danger to others and to the community if one of the defendants were released on bail. *Id.* at *2. However, Judge Kaplan concludes that "[w]hile the government's proffer certainly supports the assertion that the defendant has engaged in fraudulent activities in the past, it has made no real effort to suggest that there is a substantial risk that he will continue to do so if released pending trial, particularly given the change in his personal circumstances. So the danger argument comes down to an assertion that [the defendant] is likely to tamper with witnesses or attempt to obstruct justice if released on bail." *Id.* at *2 (granting the defendant conditioned release pending trial).

While the Court does not accept the post-conviction/pre-conviction distinction[10] urged by

---

[10] While the burden of proof and standard may differ when the presumption of innocence remains with the defendant in the context of pretrial detention, bail decisions are made pursuant to the Bail Reform Act, and the terms used should be given the same meaning.

Madoff to dispense with cases cited by the Government,[11] the Court does consider that a presumption of innocence may be a factor in determining the weight of an alleged economic harm and whether it would rise to the level of danger to the community. For example, in *Reynolds*, the court concluded that the defendant had failed to show by clear and convincing evidence that he did not constitute an economic danger to the community after a jury had convicted him of mail fraud and witness tampering. *Reynolds*, 956 F.2d at 192 (denying bail pending appeal of convictions).[12] The question appears to become one of propensity to commit further crimes, even if the resulting harm is solely economic. *See Provenzano*, 605 F.2d at 95. This seems to be true even in the cases where pretrial detention is the relevant question. *See, e.g.*, *United States v. Persaud*, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) (agreeing that "economic harm qualifies as a danger within the contemplation of the Bail Reform Act" but ultimately granting the defendant pretrial release); *see also Gentry*, 455 F. Supp. 2d at 1032 ("[d]anger . . . may be recognized in terms other than the use of force or violence[]" but ultimately concluding that possibility of defendant perpetrating further economic crimes weighed neither in favor of release or detention).[13] In general, concern about future nonphysical harm to

---

[11]Ultimately, the Court accepts that in certain circumstances an economic or pecuniary harm may give rise to a consideration of danger for purposes of detention, either prior to trial or where the convicted awaits appeal. *See, e.g.*, *Stein*, 2005 WL 3071272, at *2 (pretrial); *United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) (pretrial); *Parr*, 399 F. Supp. at 888 (pretrial); *United States v. Gentry*, 455 F. Supp. 2d (D. Ariz. 2006) (pretrial).

[12]*United States v. Zaragoza*, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008), is in a similar procedural posture and also notes that danger to community can include narcotics activity or even encompass pecuniary or economic harm. *Id.* (citing *Reynolds*, 956 F.2d at 192).

[13]The Government additionally presents *United States v. LeClercq*, 2007 WL 4365601, at *4 (S.D. Fla. Dec. 13, 2007). "The reference to safety of the community in the Bail Reform Act of 1984 'refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The [Senate Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.'" *See id.* at *4, n.5 (quoting *United States v. King*, 849 F.2d, 485, 487, n.2 (11th Cir. 1988)).

the community has been primarily considered where the charges or convictions fall under the enumerated felonies articulated in 18 U.S.C. §3142(f)(1), in particular in the context of child pornography or drug trafficking charges. *See, e.g.*, *Zaragoza*, 2008 WL 686825; *Provenzano*, 605 F.2d at 95-96 (acknowledging the possibility of nonphysical harm but reviewing the two defendants' criminal records, histories of violence and the great possibility of extensive and continual undue influence, and other considerations, before denying them bail); *Schenberger*, 498 F. Supp. 2d 738 (finding danger is not just physical harm or violent act, but includes non physical harm within the concept of safety, here in the context of child pornography allegations).

The Court recognizes, therefore, that there is jurisprudence to support the consideration of economic harm in the context of detention to protect the safety of the community. Although the scope of this factor remains uncertain,[14] the Court proceeds to the second step of this analysis. Here, the Government fails to provide sufficient evidence that any potential future dissemination of Madoff's assets would rise to the level of an economic harm cognizable under § 3142 of the Bail Reform Act. Further, it is far too great an extension to reach from the cases presented by the Government that narrowly recognize the possibility of economic harm (and rarely conclude the economic harm presented rises to the level of a danger to the community for which someone should be detained) to such a conclusion based on the minimal evidence presented here by the Government.

---

[14]For example, in instances where courts have acknowledged economic harm and the convictions have not included the "enumerated felonies" or other crimes where the Court presumes a danger to the community, as aforementioned, they have ultimately made their determination based on consideration of the flight risk and not as a result of finding the accused or convicted individual will perpetrate a pecuniary or economic harm that requires detention. *See, e.g.*, *Parr*, 399 F. Supp. at 888 (assessing the likelihood of flight risk as primary reason for detention and noting accused's violation of a material condition of his bail bond to support conclusion of need for detention); *Gentry*, 455 F. Supp. 2d 1018 (analyzing the factors relevant to determination of flight risk and ultimately denying bail); *see also Stein*, 2005 WL 3071272.

### b. Whether Detention is the Appropriate Ameliorative Measure

While the Court finds that the Government takes too great a leap in concluding that the potential dissemination of restitution assets rises to the level of danger to the community as contemplated by § 3142 of the Bail Reform Act, the Court also finds that the Government has failed to carry its burden of showing that no condition or combination of conditions of pretrial release will reasonably assure the safety of the community.

The Government argues that, given Madoff's failure to abide by the preliminary injunction so ordered by Judge Stanton in the civil case, and the fact that there is no practical way to prevent future dissipation of certain of his assets, no condition short of remand will suffice to protect the safety of the community. (Gov. Mem. at 5.) It argues that Madoff's actions constitute a change in circumstances, and that the current bail conditions are insufficient. (Gov. Mem. at 6.)

Madoff responds by describing his current state of affairs, including 24 hour-a-day confinement; no access to any bank account held by him, his wife, or joint accounts; his real property in the United States pledged as collateral for the personal recognizance bond he executed as part of his bail;[15] and his name, face and circumstance known to every financial institution in the world. (Def.'s Mem. at 7.) Further, Madoff notes that since the entry of his current bail conditions, his wife has voluntarily consented to a restraint agreement with the United States Attorney's Office that prohibits her dissemination of any of her personal property. Finally, Madoff provides suggestions for further methods to secure any valuable portable

---

[15]The Second Circuit recognizes that a court may "hold a hearing to ensure that whatever assets are offered to support a bail package are derived from legitimate sources." MEHLER, GLEESON & JAMES, SECOND CIRCUIT HANDBOOK 102 (referencing *United States v. Nebbia*, 357 F.2d 303, 304 (2d Cir. 1966)). As the Government has failed to raise this issue or request any such hearing, the Court presumes that the Government has no basis to question the assets provided for the recognizance bond or any of the conditions of release.

property without the need for his detention. (Def.'s Mem. at 10, 17.)

The Government has failed to meet the additional burden of proving by clear and convincing evidence that there is no condition or combination of conditions that will reasonably prevent dissipation of such property. *See* 18 U.S.C. § 3142(e). In fact, its failure to respond to the various additional bail conditions presented by Madoff further supports the weakness of its argument and its inability to show why Madoff's detention would markedly ameliorate any alleged danger to the community that may result from dissipation of his assets.

**D. Determination of Bail Conditions**

The Court rejects the Government's proposition that the setting of bail conditions is "based, fundamentally, on the trustworthiness of the defendant." (Def.'s Reply at 4.)  Indeed, implicit in the bail condition analysis is the assumption that the defendant cannot be trusted on his own. The Bail Reform Act provides that the Court "shall order the pretrial release of the [defendant] on personal recognizance, or execution of an unsecured bond." 18 U.S.C. § 3142(b). Only if the Court determines that trust of the defendant is insufficient to assure appearance and maintain safety should the Court impose additional conditions. One need only review the conditions enumerated in § 3142(c)(1)(B) to conclude that these measures are designed for situations in which the Court has determined that additional safeguards are necessary to control the defendant. The Court finds it difficult to conclude, for example, that the current conditions of release are based on Madoff's trustworthiness.

The specific harm identified by the Government is the pretrial dissipation of assets. While the Court believes that the prior restrictions on Madoff appear well-considered and have greatly diminished Madoff's ability to effectuate any kind of transfer, the following added conditions are

designed as further protections:

>(1) The restrictions set forth in the preliminary injunction entered on December 18, 2008, in the civil case brought by the SEC before District Judge Louis L. Stanton, including restrictions on transfer of all property whatsoever, wherever located, in the possession or under the control of Madoff, **SHALL** be incorporated into the current bail conditions;
>
>(2) The restrictions set forth in the voluntary restraint agreement signed by Mrs. Madoff on December 26, 2008, **SHALL** be incorporated into the current bail conditions; and
>
>(3) Madoff **SHALL** compile an inventory of all valuable portable items in his Manhattan home. In addition to providing this inventory to the Government, Casale Associates, or another security company approved by the Government, **SHALL** check the inventory once every two weeks. Casale Associates, or another security company approved by the Government, **SHALL** search all outgoing physical mail to ensure that no property has been transferred. The Government and Madoff shall agree on a threshold value for inventory items within one week of this Order.

## III. CONCLUSION

The Government seeks an order detaining Defendant Madoff prior to trial based on risk

of flight and danger to the community. On this matter, the Government has the burden of proof –

by a preponderance of the evidence with respect to the question of flight, and by clear and

convincing evidence with respect to question of danger – that there are no conditions which can

be set to address these concerns. The Court finds that the Government has failed to meet its

burden as to either ground. Accordingly, its motion is **DENIED**.

**SO ORDERED this 12th day of January 2009**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**