

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*



*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 3, 2009



<u>BY HAND</u>

Honorable Leonard B. Sand
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re: <u>United States</u> v. <u>Bernard L. Madoff</u>
       08 Mag. 2735

Dear Judge Sand:

   The Government respectfully submits this letter to notify the Court of potential conflicts of interest relating to the representation of the defendant, Bernard Madoff, by Ira Sorkin, Esq., in the above-referenced case. The Government has requested that the Court conduct a hearing pursuant to <u>United States</u> v. <u>Curcio</u>, 680 F.2d 881 (2d Cir. 1982), and the Court has scheduled a hearing for March 4, 2009 at 10:00 a.m.

<b>Discussion</b>

   The Government respectfully submits that there are three issues that pose potential conflicts of interest with respect to Mr. Sorkin's representation of the defendant: (1) Mr. Sorkin's prior representation of Frank Avellino, Michael Bienes and the accounting firm Avellino & Bienes, all of which had a business relationship with the defendant and Bernard L. Madoff Investment Securities ("BLMIS"); (2) Mr. Sorkin's family's investment in BLMIS; and (3) Mr. Sorkin's own investment in BLMIS.

**A. Potential Conflicts of Interests in This Case**

   **1. Representation of Frank Avellino and Michael Bienes**

   First, the Government respectfully submits that Mr. Sorkin's prior representation of Frank Avellino and Michael Bienes, and their firm Avellino & Bienes, presents a potential conflict of interest in his representation of Madoff. In the early 1990s, Mr. Sorkin represented Avellino, Bienes and their firm in connection with a civil case brought by the Securities and Exchange

Honorable Leonard B. Sand
March 3, 2009

Commission ("SEC"). The case alleged that, from 1962 to 1992, Avellino, Bienes and Avellino & Bienes sold unregistered securities and that the firm had been operating as an unregistered investment company. The money that Avellino and Bienes raised from their clients was invested with Madoff. The case resulted in a settlement with the SEC in 1993.

Madoff had a long-standing business relationship with both Avellino and Bienes. Moreover, after the SEC action was resolved, the Avellino & Bienes firm dissolved and Madoff took over many of the Avellino & Bienes clients. Avellino and Bienes, therefore, are potential trial witnesses against Madoff. These facts create a potential conflict of interest because Mr. Sorkin's ability to cross-examine his former clients could be severely curtailed. Furthermore, if Mr. Sorkin obtained information useful to Madoff's defense through his prior representation of Avellino and Bienes, he would be unable to use that information in representing Madoff if it was conveyed to him under the protection of the attorney-client privilege. However, in light of the fact that Mr. Sorkin's representation of Avellino and Bienes, and their firm, has been terminated, and the fact that Avellino and Bienes have not sought to disqualify Mr. Sorkin from representing Madoff, the Government believes that any potential conflict is waivable.

## 2.    Investments of Mr. Sorkin's Parents and Sons

Second, Mr. Sorkin's parents had an investment of approximately $900,000 with BLMIS. Based on documents provided to the Government by Mr. Sorkin, the $900,000 investment was transferred in equal shares, after the deaths of his parents, to trust accounts set up for the benefit of Mr. Sorkin's two sons. Mr. Sorkin has told the Government, and the documents provided to the Government reflect, that although Mr. Sorkin is currently a trustee of the sons' trust accounts, Mr. Sorkin never had a beneficial interest in the $900,000. Documents provided by the Government to Mr. Sorkin also show that the investment was transferred from BLMIS to Merrill Lynch in approximately August 2007. These facts create a potential conflict of interest because a situation may arise that could result in Mr. Sorkin having loyalties divided between his sons and Madoff. For example, Mr. Sorkin could be less likely to challenge restitution that the Government will seek from Madoff, upon a conviction, because restitution could be in the interests of Mr. Sorkin's sons. Also, Mr. Sorkin's sons could be adverse to Madoff in potential civil litigation. Further, Mr. Sorkin's sons' investments could be the subject of litigation brought by the Court-appointed Trustee for BLMIS. There are numerous situations that could arise, and that the parties cannot now predict, that could put Mr. Sorkin in a position where his loyalties are divided between Madoff on the one hand and his sons and their financial interest on the other hand. The Government believes, however, that any potential conflict arising out of the financial interests of Mr. Sorkin's sons is waivable.

Honorable Leonard B. Sand
March 3, 2009

### 3.   Mr. Sorkin's Own Investment

Third, Mr. Sorkin has informed the Government that he invested approximately $18,860 with BLMIS in the early 1990s through a retirement account that had been set up by his former law firm. Mr. Sorkin believes he transferred this investment from BLMIS to another brokerage firm in 1995. Because this investment was liquidated more than ten years ago and Mr. Sorkin has had no investment with BLMIS since then, the Government does not believe that these facts present any potential conflicts. However, the Government raises it with the Court now so that the defendant can be advised of these facts.

### B.   Applicable Law

The Sixth Amendment provides a criminal defendant with the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." United States v. Schwarz, 283 F.3d 76, 90 (2d Cir. 2002). District courts have two separate obligations where there is a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). Second, if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a Curcio hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant. Id.

Three types of conflicts of interest are the subject of judicial inquiry and can potentially result in the deprivation of the effective assistance of counsel: (1) a *per se* conflict; (2) an actual conflict; and (3) a potential conflict that results in prejudice to the defendant. See Armienti v. United States, 313 F.3d 807, 810 (2d Cir. 2002); United States v. John Doe No. 1, 272 F.3d 116, 125 (2d Cir. 2001).

In the Second Circuit, *per se* conflicts have been found only in two classes of cases: where trial counsel "is not authorized to practice law" and where trial counsel "is implicated in the very crime for which his or her client is on trial." Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000); accord United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004). The Second Circuit has repeatedly and consistently refused to extend the *per se* rule beyond the two prescribed categories. United States v. Levy, 25 F.3d at 157 n.8 ("[W]e have repeatedly stressed the limited reach of the *per se* rule, emphasizing that it applies only when a defendant's lawyer was unlicensed or had engaged in the defendant's crimes."); see also United States v. John Doe

Honorable Leonard B. Sand
March 3, 2009

No. 1, 272 F.3d at 125 ("we have limited *per se* conflicts to [these] two instances").

An actual conflict exists when, "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material legal or factual issue or to a course of action." United States v. Schwarz, 283 F.3d at 91. To show divergent interests, "[s]peculation is not enough." Triana v. United States, 205 F.3d 36, 42 (2d Cir. 2000). Nor is a "mere theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171 (2002). There can be an actual conflict of interest if "the attorney's current representation is impaired by the loyalty he owes a former client." United States v. Leslie, 103 F.3d 1093, 1098 (2d Cir. 1997) (citing United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995)).

Conflicts that do not fall into the categories of *per se* conflicts or actual conflicts are described as potential conflicts. See, e.g., Armienti v. United States, 234 F.3d at 824. "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003) (quoting United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998)). Conflicts "such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." Perez, 325 F.3d at 127. However, "such a conflict might require a defendant to abandon a particular defense or line of questioning," and the defendant must "seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel." Id. at 127 (quoting United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conducts a Curcio hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." Id. at 127.

The Supreme Court has stated that although a defendant may generally waive his Sixth Amendment right to a non-conflicted attorney, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988); see United States v. Fulton, 5 F.3d at 612. Where a conflict is so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation, then the court must disqualify the attorney. See United States v. Levy, 25 F.3d at 152-53.

Also, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. Given that "[c]onflicts of interest are notoriously hard to predict at this early stage of the criminal proceedings, even for those intimately familiar with those proceedings," it is important for "district courts [to] have latitude

Honorable Leonard B. Sand
March 3, 2009

to permit or deny a defendant's waiver of such conflict." United States v. Jones, 381 F.3d at 120;
Wheat, 486 U.S. at 163 (district courts have 'substantial latitude" in determining whether a
conflict is waivable).

Accordingly, even the risk of a potential conflict becoming an actual conflict is, in certain
cases, sufficient to empower the district court to decline to accept a waiver. Jones, 381 F.3d at
121; United States v. Rahman, 861 F. Supp. 266, 275 (S.D.N.Y. 1994) (judicial assessment of a
potential conflict "must include . . . both a prudent awareness of how little can be predicted with
certainty before a trial begins and a sober regard for how much can go wrong once a trial starts").
A district court's decision to disqualify defense counsel is reviewed on appeal for abuse of
discretion. United States v. Locasio, 6 F.3d 924, 931 (2d Cir. 1993).

With respect to the situation where an attorney previously represented a potential witness
against his current client, the Court is obligated to ensure that the defendant understands that he
has a right to conflict-free counsel. See United States v. Stein, 410 F. Supp.2d 316, 329
(S.D.N.Y. 2006) (disqualification not necessary where defendant was willing to proceed with
current counsel even if current counsel was barred from pursuing certain lines of cross-
examination of witnesses previously represented by counsel, and where those witnesses did not
seek disqualification of defendant's counsel); United States v. Levy, 25 F.3d at 156 (concluding
that even if defense counsel had fully terminated his representation of a former client charged in
the same case, the attorney's continuing legal and ethical obligations to protect the former client
necessarily meant that the attorney's interests diverged from his current client's, especially since
the current client's most likely defense was to shift blame to the former client).

Finally, the Second Circuit has set forth the requirements for a Curcio procedure in great
detail. At such a hearing, the trial court (1) advises the defendant of his right to representation by
an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising
from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4)
encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time
for the defendant to make a decision, and (6) determines, preferably by means of questions that
are likely to be answered in narrative form, whether the defendant understands the risks of
representation by his present counsel and freely chooses to run them. United States v. Perez, 325
F.3d at 119 (citing Curcio, 680 F.2d at 888-90).

Therefore, the Government respectfully submits that the Court should advise the
defendant about the potential conflicts of interests that may result from Mr. Sorkin's continued
representation and the Court should inquire whether the defendant seeks new counsel or is
willing to waive the potential conflicts and proceed with Mr. Sorkin's representation. If the
defendant wants to proceed with Mr. Sorkin's representation, the Government respectfully
requests that the Court ensure that his waiver of the right to conflict-free representation is
voluntary and knowing.

Honorable Leonard B. Sand
March 3, 2009

## **Conclusion**

   The Government respectfully requests that the Court conduct a <u>Curcio</u> hearing in this case. A proposed <u>Curcio</u> examination is attached.

        Respectfully submitted,

        LEV L. DASSIN
        Acting United States Attorney

    By:                   

        Marc Litt/ Lisa A. Baroni
        Assistant United States Attorneys
        Tel.: (212) 637-2295/ (212) 637-2405

cc:  Ira Sorkin, Esq.

Honorable Leonard B. Sand
March 3, 2009

Proposed <u>Curcio</u> Examination of Bernard L. Madoff

I.   Introductory Questions To Establish Competence

    Age
    Education
    Current medications
    Alcohol, drugs, medications within past 24 hours
    Is anything interfering with your ability to understand what is happening here today?

II.  Potential Conflict Of Interest Posed By Ira Sorkin's Prior
    Representation of Frank Avellino, Michael Bienes and Avellino & Bienes

    A.   Are you satisfied with the services of Ira Sorkin thus far in the case?

    B.   Has Mr. Sorkin informed you that he previously represented two individuals.
        Frank Avellino and Michael Bienes, who could be called to testify as witnesses
        against you?

    C.   Has Mr. Sorkin discussed with you the issues relating to his prior representation
        of the potential witnesses against you?  How long have you been aware of this
        issue?  Have you had enough time to discuss this issue with him?

    D.   Do you understand that the fact that Mr. Sorkin previously represented potential
        witnesses against you may lead him to have loyalties divided between yourself
        and those witnesses?  Do you understand that Mr. Sorkin might have an incentive
        to put the interests of his former clients before yours?

    E.   Let me give you some examples of the ways in which the allegiance of Mr. Sorkin
        to his former clients could adversely affect his representation of you in this case.
        This representation could affect the way that Mr. Sorkin advises you:

        1.   Whether you should plead guilty or go to trial;

        2.   Which defenses you should raise;

        3.   Whether you should testify at trial;

        4.   Which witnesses should be cross-examined, and what
            questions they should be asked;

        5.   Which witnesses to call, and what other evidence to offer on your behalf;

Page 1

Honorable Leonard B. Sand
March 3, 2009

> 6. What arguments to make on your behalf to the jury;
>
> 7. What arguments to make to the Judge who presides over your case, and what facts to bring to that Judge's attention, before trial, during trial, or at your sentencing.

F. Let me give you some more specific examples of the potential conflicts of which I am speaking:

> 1. Do you understand that because Mr. Sorkin previously represented individuals who are potential witnesses against you, he might not be as willing to defend you by making arguments or presenting evidence relating to his former clients? Do you understand that for these reasons, the representation Mr. Sorkin provides for you could be negatively affected by the potential conflict of interest he faces?
>
> 2. Do you understand that if you continue to be represented by Mr. Sorkin, he might not advise or help you in doing anything that would harm his former clients' interests, even if it is in your best interest to do so?
>
> 3. Neither the Government nor Mr. Sorkin can state with certainty whether or not his former clients will be called as a witness in this case. If this happens, Mr. Sorkin's prior representation of those individuals could adversely affect your defense. Any information that his former clients provided to Mr. Sorkin during the time he represented them is likely to be protected by the attorney-client privilege. As a result, unless his former clients waive the privilege, Mr. Sorkin will not be permitted to disclose anything his former clients told him. Do you understand that because of this privilege, Mr. Sorkin might not be able to cross-examine his former clients if they are called as witnesses? Do you understand that even if Mr. Sorkin is able to cross-examine his former clients, he will not be able to disclose any privileged information they provided him during his prior representation of him? Do you understand that for these reasons, Mr. Sorkin's prior representation those individuals might adversely affect your defense?
>
> 4. Do you understand that under the attorney-client privilege that we have been discussing, Mr. Sorkin has a duty not to disclose privileged information he learned from his former clients, regardless of whether those individuals testify as witnesses at your trial? For example, Mr. Sorkin would not be permitted to use what his former clients told him to assist

Page 2

Honorable Leonard B. Sand
March 3, 2009

> you in remembering certain events or in helping you prepare to testify. Do you understand this? Do you understand that it could impair your defense?

5. Do you understand these examples? Do you understand that the conflict of interest Mr. Sorkin is facing might affect the advice he gives you regarding all of these issues? Is there anything else you would like explained to you on this conflict?

G. Although I have been describing examples of the ways in which Mr. Sorkin's potential conflict of interest might arise, and might adversely affect the representation he provides you, there is no way for me or anyone else to predict whether or how you might be harmed by your attorney's potential conflict. Do you understand that the greatest danger is the inability to foresee all the conflicts that may arise over the course of your case? Do you understand that at this point, nobody can predict how or whether these conflicts will arise, and how they might affect your case?

H. Do you understand that the Court, having presided at many trials, believes that representation by an attorney with a potential conflict of interest may be ill-advised?

I. Describe in your own words your understanding of the potential conflict of interest arising in this situation, and how that potential conflict might affect your case.

III. Potential Conflict Of Interest Posed By Ira Sorkin's Investments And His Family's Investments in BLMIS

A. Has Mr. Sorkin informed you that his family previously had an investment with BLMIS? Has he informed you that, in particular, his sons previously had an investment with BLMIS?

B. Has Mr. Sorkin discussed with you the issues relating to his family's financial interests?

C. Do you understand the fact that Mr. Sorkin's family had an investment in BLMIS may lead him to have loyalties divided between you and his sons?

D. Let me give you some examples of the ways in which the allegiance of Mr. Sorkin to his sons (and their financial interests) could adversely affect his representation

Honorable Leonard B. Sand
March 3, 2009

of you in this case. It could affect the way that Mr. Sorkin advises you about:

1.    Whether you should challenge any restitution orders or fines sought by the Government;

2.    Which witnesses to call, and what other evidence to offer, on your behalf, at a sentencing hearing, if you are convicted;

3.    What arguments to make on your behalf to the sentencing judge, and what facts to bring to that judge's attention in connection with restitution or fines;

E.    Do you understand that Mr. Sorkin's sons may have a potential civil case against you? And that could result in Mr. Sorkin's divided loyalties and could negatively affect his representation of you?

IV.    The Right to Conflict-Free Representation

A.    Do you understand that you have the right to object to Mr. Sorkin's continued representation of you based upon the existence of potential conflicts of interest?

B.    Do you understand that you have the right to counsel free of conflict, whose loyalty to you is absolutely undivided, who is not subject to any factor that might in any way intrude upon his loyalty to your interests? For example, as I stated earlier, if you do go to trial and Mr. Sorkin's former clients testify, Mr. Sorkin will have a divided loyalty – loyalty to you and loyalty to his former clients?

C.    It is important that you understand that no one can predict with any certainty the course that this case will take or how this conflict may arise. Are you aware that you will not be able to appeal on this issue if you elect to waive any conflict of interest and decide to maintain Mr. Sorkin as your attorney? Do you understand that an appellate court would take into account your consent to his continued representation of you and hold that you have given up your right to complain of any conflict of interest?

D.    Have you consulted with any attorneys other than Mr. Sorkin about the dangers to you of these potential conflicts of interest?

E.    Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you

Page 4

Honorable Leonard B. Sand
March 3, 2009

> today that you wish to discuss with a conflict-free attorney?

F.     The Court is prepared to adjourn the remainder of this proceeding so that you may consult with an attorney other than Mr. Sorkin about the conflict of interest that I have described to you today. In addition, the Court can appoint an attorney for you to consult on this matter if you cannot afford one. Would you prefer to adjourn until you can give more thought to this matter?

G.     After considering all that I have said today about the ways in which Mr. Sorkin's representation of his former clients, and the ways in which his son's financial interests, may adversely affect your defense, do you believe that it is in your best interest to continue with him as your attorney? Is that your wish?

H.     Do you understand that by choosing to continue with Mr. Sorkin as your attorney, you are waiving your right to be represented solely by an attorney who has no conflict of interest?

I.     Are you knowingly and voluntarily waiving your right to conflict-free representation?

J.     Do you agree to waive any post-conviction argument, on appeal or otherwise, that by virtue of Mr. Sorkin's prior representation of Frank Avellino, Michael Bienes and Avellino & Bienes, and by virtue of Mr. Sorkin's sons' financial interests, you were denied effective assistance of counsel by Mr. Sorkin?

K.     Is there anything that I have said that you wish to have explained further?